No. 44,065

JOHN D. JONES, *Appellee,* v. CITY OF DODGE CITY, KANSAS and PHOENIX ASSURANCE COMPANY OF NEW YORK, *Appellants.*

(402 P. 2d 108)

Opinion filed May 15, 1965.

*J. J. Mangan,* of Dodge City, argued the cause, and was on the briefs for the appellants.

*R. R. Mitchell,* of Dodge City, argued the cause, and *W. C. Gould* and *Don C. Smith,* of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This was a workmen's compensation case. The district court found that the claimant, John D. Jones, was in the employ of respondent city on March 22, 1962, and that he sustained injury by accident arising out of and in the course of that employment on that date.

In the words of the respondent city and its insurance carrier (respondent), the principal question involved is the contention that: "There was no substantial competent evidence to support the trial court's finding that claimant was in the employ of the City of Dodge City when he was injured."

The undisputed facts are summarized: The claimant, a 63-year-old man, was a general carpenter who had worked mostly on his own during the past twelve years. Mike Gebhart, manager of the Dodge City airport, lived in a dwelling at the airport owned and furnished to him by the city. The ceiling over the stairway into the basement of the residence needed repair. Gebhart called Dwight Holland, manager of the T. M. Deal Lumber Company, of Dodge City, and asked him to send a man named George Keller out to do the work. Holland told Gebhart that Keller was tied up on a job and that he would send claimant Jones out when Jones got back from Texas. On March 22, 1962, Holland called the claimant and told him that Gebhart wanted him to come to the city airport; that Geb-

hart had tried to get in touch with him, but failed, and that he should go to the airport and contact Gebhart. The claimant drove to the airport and contacted Gebhart who took him to the house and told the claimant that he wanted the wall and ceiling sheetrocked and finished. Gebhart told the claimant to figure the materials he needed, order them from T. M. Deal Lumber Company, and charge them to the city airport. Nothing was said about wages. Gebhart left, and did not see Jones again until after he was hurt. Jones ordered the materials, and while waiting for them to be delivered, started preparing the area for the sheetrock. The claimant got another man who was an employee of the lumber company to help him with the ceiling. The claimant used his own tools and equipment in doing the work.

After the sheetrock arrived, the claimant started installing it and while doing so, he slipped and fell off the scaffolding, approximately eight and a half or nine feet, landing on his hips and the tailbone. He had immediate pain in his hips and right leg and was taken to the Dodge City Medical Center, and then to the hospital where he was treated for a broken pelvis and dislocated left kidney.

The district court found that the claimant suffered a 30 percent permanent partial general disability, and made an award in conformity with the Workmen's Compensation Act with respect to the amount of compensation due and owing the claimant, based upon his average weekly wages, and for medical and hospital expenses incurred. The respondent concedes there is substantial competent evidence in the record to substantiate the district court's finding in these respects, and, as previously indicated, the only question presented is whether the claimant was an employee of the city on the day he was injured.

Under K. S. A. 44-556, the appellate jurisdiction of this court in workmen's compensation cases is limited to reviewing questions of law only. Whether the district court's judgment in a compensation case is supported by substantial competent evidence is a question of law as distinguished from a question of fact. (*Holley v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, 148 A. L. R., Anno., 1131; *Coble v. Williams*, 177 Kan. 743, 747, 282 P. 2d 425; *Bowler v. Elmdale Developing Co.*, 185 Kan. 785, 347 P. 2d 391.) In reviewing the record to determine whether it contains substantial evidence to support the district court's factual findings, this court is required

to review all of the evidence in the light most favorable to the prevailing party below. Where the findings of fact made by the district court are based on substantial evidence, they are conclusive, and we have no power to weigh the evidence and revise those findings or reverse the final order of the court. Although this court may feel the weight of the evidence, as a whole, is against the findings of fact so made, it may not disturb those findings if they are supported by substantial competent evidence. (*Evans v. Board of Education of Hays,* 178 Kan. 275, 284 P. 2d 1068; *Barr v. Builders, Inc.,* 179 Kan. 617, 296 P. 2d 1106; *Weimer v. Sauder Tank Co.,* 184 Kan. 422, 337 P. 2d 672; *Durnil v. Grant,* 187 Kan. 327, 356 P. 2d 872.) Numerous decisions of like import are cited in 9 West's Kansas Digest, Workmen's Compensation, §§ 1940, 1969, and 5 Hatcher's Kansas Digest (Rev. Ed.), Workmen's Compensation, § 153.

The term "substantial evidence," when applied to workmen's compensation cases, means evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved. (*Barr v. Builders, Inc.,* supra; *Weimer v. Sauder Tank Co.,* supra.)

The question whether, in a given situation, a claimant for compensation is an employee within the terms of the Workmen's Compensation Act, or an independent contractor, has frequently been before this court. In *Evans v. Board of Education of Hays,* supra, this court defined the terms as follows:

". . . the term 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work, and an independent contractor represents the will of his employer only in the result of his work and not as to the means by which it is accomplished. (*Pottorff v. Mining Co.,* 86 Kan. 774, 122 Pac. 120; *Shay v. Hill,* supra; *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868; *Bittle v. Shell Petroleum Corp.,* 147 Kan. 227, 231, 75 P. 2d 829.)

". . . a master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (*Hurla v. Capper Publications, Inc.,* 149 Kan. 369, 87 P. 2d 552; *Houdek v. Gloyd,* 152 Kan. 789, 794, 107 P. 2d 751; *Garner v. Martin,* 155 Kan. 12, 112 P. 2d 735.)" (l. c. 278, 279.)

It is often difficult to determine in a given case whether a person is an employee or an independent contractor since there are elements pertaining to both relations which may occur without being determinative of the relationship. In other words, there is no exact formula which may be used in determining if one is an employee or an independent contractor. The determination of the relation in each instance depends upon the individual circumstances of the particular case.

The primary test used by the courts in determining whether an employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. (*Evans v. Board of Education of Hays*, supra; *Davis v. Julian*, 152 Kan. 749, 756, 107 P. 2d 745; *Schroeder v. American Nat'l Bank*, 154 Kan. 721, 121 P. 2d 186.)

In the instant case Gebhart showed claimant the ceiling and informed him as to the type of repairs needed. He told the claimant where to get the materials and to charge them to the city airport. Gebhart also testified that if claimant, during the course of the repair work, had been doing it wrong, he would have informed him. Moreover, the city clerk, Merle Smith, testified he paid the invoices for the materials used by claimant, and that if anyone receipted for materials received for the city and the city paid for them, it was on the basis of a receipt for a city employee. The claimant thought he was working for the city and that Gebhart was his boss. On redirect examination he testified as follows:

"Q. Now, when you went out there to the airport you say after Mike told you what he wanted done, he told you he wanted the sheetrock taped and jointed? A. That is right. Q. If Mr. Gebhart told you he didn't want it taped and jointed would you have taped and jointed? A. No. Q. If Mr. Gebhart told you to leave out some pieces of sheetrock, leave some open, what would you have done? A. I would have done what he told me. Q. He was the boss? A. Yes."

The respondent, however, maintains that no control was exercised over claimant in his performance of the work, and that after the

ceiling which required repairing was pointed out to him, he performed the work according to his own ideas subject only to the final result to be achieved.

It is disclosed in the record before us that claimant had been engaged in carpentry work for many years. The fact an employee may use his own judgment in the manner of performing his work does not, of itself, make him an independent contractor. In this case the important consideration is that even though Gebhart left the manner of making the repairs largely to the skill and judgment which claimant possessed, he still had the reserved right to control the method and means of doing the work, and the claimant was at all times subject to any instruction or directions from Gebhart in regard thereto.

Although the right-of-control test is the most important single consideration, it is not, however, an exclusive test—other relevant factors are also to be considered. (*Snedden v. Nichols*, 181 Kan. 1052, 317 P. 2d 448; *Snyder v. Lamb*, 191 Kan. 446, 381 P. 2d 508.) A careful study of the record discloses no contract for the completion of the work or for any definite period of employment. It is clear that Gebhart could have discharged claimant, if he had chosen to do so. This is one of the indicia of a master-servant relationship. The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. (1 Larson, Workmen's Compensation, § 44.35, p. 654.) Furthermore, in this case it cannot be said there was an agreement as to the specified result of the work, either as a unit or as a whole, since there was no means existing independent of the will of Gebhart for determining and limiting the work to be performed.

Claimant testified that although there was no express agreement between respondent and himself concerning wages, he charged $2.50 per hour for his services. The amount of his compensation would therefore normally depend upon, not the completion of a job, but the length of time required to perform the job. The fact that a workman receives payment by the hour or day instead of by the job is indicative, though not conclusive, of an employer-employee relationship. (Larson, *op cit., supra,* § 44.33, p. 645.)

Taking all of the circumstances of this case into account, we think there is substantial evidence in the record before us to justify the district court's finding as it did that claimant at the time he was injured was an employee and not an independent contractor.

Other questions raised by respondent have been examined, but in view of what has been said, are found to be without substantial merit insofar as they affect the conclusions reached by the district court.

The judgment is affirmed.