Ted D. Ayres General Counsel and Director of Government Relations Kansas Board of Regents 700 S.W. Harrison, Suite 1410 Topeka, Kansas 66603-3760
Dear Mr. Ayres:
On behalf of the university of Kansas and the Kansas board of regents, you request our opinion regarding the applicability of the Kansas tort claims act to persons engaged in residency training, as defined by K.S.A. 1992 Supp. 40-3401(r), for claims which may arise from their service to indigent health care clinics, as defined by K.S.A. 1992 Supp.75-6102(h), as amended by 1993 Senate Bill No. 14, sec. 2.
K.S.A. 1992 Supp. 75-6115 was amended by the 1993 legislature, effective April 1, 1993, to provide as follows:
 "(a) The Kansas tort claims act shall not be applicable to claims arising from the rendering of or failure to render professional services by a health care provider other than:
(1) A charitable health care provider;
 (2) a hospital owned by a municipality and the employees thereof;
 (3) a local health department and the employees thereof;
 (4) an indigent health care clinic and the employees thereof.
. . .
(c) As used in this section:
 (1) `Indigent health care clinic' shall have the meaning ascribed to such term under K.S.A. 75-6102, and amendments thereto.
 (2) `Charitable health care provider' shall have the meaning ascribed to such term under K.S.A. 75-6102, and amendments thereto.
 (3) `Health care provider' shall have the meaning ascribed to such term under K.S.A. 40-3401, and amendments thereto.
 (4) `Hospital' means a medical care facility as defined in K.S.A. 65-425, and amendments thereto, and includes within its meaning any clinic, school of nursing, long-term care facility, child-care facility and emergency medical or ambulance service operated in connection with the operation of the medical care facility.
 (5) `Local health department' shall have the meaning ascribed to such term under K.S.A. 65-421
and amendments thereto." 1993 S.B. No. 14, sec. 3, 12 Kan. Reg. No. 13, p. 499, 500 (April 1, 1993).
Thus, the Kansas tort claims act now specifically applies to claims arising from the rendering of, or failure to render, professional health care services by an indigent health care clinic and its employees. Seealso K.S.A. 1992 Supp. 75-6102 (d), as amended by 1993 S.B. No. 14, sec. 2 ("`[e]mployee' also includes an employee of an indigent health care clinic"). It remains to be determined whether a person in residency training, as defined by K.S.A. 1992 Supp. 40-3401(r), who performs services for an indigent health care clinic is an employee of that clinic and therefore covered by the act.
K.S.A. 1992 Supp. 75-6115(c)(1), as amended, refers to K.S.A. 1992 Supp. 75-6102, as amended, for the definition of "indigent health care clinic." The latter statute, at subsection (h) states: "`Indigent health care clinic' means an outpatient medical care clinic operated on a not-for-profit basis which has a contractual agreement in effect with the secretary of health and environment to provide health care services to medically indigent persons." The term "medically indigent person" is defined at K.S.A. 1992 Supp. 75-6102(g), as amended by 1993 Senate Bill No. 14. Any employee of such a clinic is now eligible for coverage under the tort claims act for negligent or wrongful acts or omissions occurring within the scope of employment. Because the term "employee of an indigent health care clinic" is used within the definition of "employee" in the tort claims act, K.S.A. 1992 Supp. 75-6102(d), as amended, we believe the term should be given the meaning ascribed to it by common law. Thus, a person engaged in residency training would have to be employed by, as opposed to an independent contractor of, the indigent health care clinic. There is no absolute rule for determining whether an individual is acting as an employee or an independent contractor; the determination must be made on a case-by-case basis taking all of the circumstances into consideration. Wallis v. Secretary of the KansasDept. of Human Resources, 236 Kan. 97, 102 (1984). However, the primary test used by the Kansas appellate courts is whether the employer has the right to control and supervise the individual's work and to direct the manner in which the work is to be performed as well as the result to be accomplished. 236 Kan. at 102-103. It is not material whether the employer actually exerts these rights, but rather the existence of such rights. Jones v. City of Dodge City, 194 Kan. 777, 780 (1965).
Even if the person in residency training does not meet the common law definition of an employee of the indigent health care clinic, the individual may meet the definition of a charitable health care provider and be eligible for coverage as such. The term "charitable health care provider" is defined at K.S.A. 1992 Supp. 75-6102, as amended by 1993 S.B. No. 14, sec. 2:
 "(f) `Charitable health care provider' means a person licensed by the state board of healing arts as an exempt licensee or a health care provider as the term `health care provider' is defined under K.S.A. 65-4921, and amendments thereto, who has entered into an agreement with:
 (1) The secretary of health and environment under K.S.A. 1992 Supp. 75-6120, and amendments thereto, who, pursuant such agreement, gratuitously renders professional services to a person who has provided information which would reasonably lead the health care provider to make the good faith assumption that such person meets the definition of medically indigent person as defined by this section or to a person receiving medical assistance from the programs operated by the department of social and rehabilitation services, and who is considered an employee of the state of Kansas under K.S.A. 1992 Supp. 75-6120, and amendments thereto; or
. . . .
 (3) a local health department or indigent health care clinic which renders professional services to medically indigent persons or persons receiving medical assistance from the programs operated by the department of social and rehabilitation services gratuitously or for a fee paid by the local health department or indigent health care clinic to such provider and who is considered an employee of the state of Kansas under K.S.A. 1992 Supp. 75-6120 and amendments thereto. . . ."
A person in residency training, as defined by K.S.A. 1992 Supp.40-3401(r), would not be issued an exempt license by the board of healing arts [see K.S.A. 65-2809(f), as amended by 1993 S.B. No. 14, sec. 1], but would meet the definition of a health care provider under K.S.A. 65-4921(c) and K.S.A. 1992 Supp. 40-3401(f). Thus, if the individual has entered into the appropriate agreement under K.S.A. 1992 Supp. 75-6102(f), that individual would be eligible for coverage under the Kansas tort claims act as a charitable health care provider, whether or not an "employee" of the clinic, if the individual is considered an employee of the state pursuant to K.S.A. 1992 Supp. 75-6120. We note that professional services rendered by a health care provider through an indigent health care clinic pursuant to an appropriate agreement are to be deemed gratuitous "notwithstanding fees based on income eligibility guidelines charged by [the clinic] and notwithstanding any fee paid by the [clinic] in accordance with" K.S.A. 1992 Supp. 75-6102(f)(3), as amended.
In conclusion, persons engaged in residency training, as defined by K.S.A. 1992 Supp. 40-3401(r), are entitled to coverage under the Kansas tort claims act for claims which arise from their service to indigent health care clinics, as defined by K.S.A. 1992 Supp. 75-6102(h), as amended, if they are employees, under the common law definition, of the clinic or if they have entered into the appropriate agreement pursuant to K.S.A. 1992 Supp. 75-6102(f), as amended, and are deemed employees of the state pursuant to K.S.A. 1992 Supp. 75-6120.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm